AGRIBANK FCB, Plaintiff–Respondent,

v.

CROSS TIMBERS RANCH, INC., Gregory F. Allison, Holly Allison, W.E. Allison and Mallie Ann Allison, Defendants–Appellants.

No. 20026.

Missouri Court of Appeals,
Southern District,
Division One.

March 21, 1996.

William A.R. Dalton, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for appellants.

Jerry W. Venters, Venters, Pletz and Reed, P.C., Jefferson City, for respondent.

PER CURIAM.

The trial court granted a summary judgment in favor of AgriBank FCB in regard to the four-count counterclaim of Cross Timbers Ranch, Inc. This appeal followed.

In 1978, Allison Brothers, Inc., which later became Cross Timbers Ranch, Inc., and sole Appellant in this action (hereinafter referred to as "Cross Timbers") and William E. Allison and Mallie A. Allison, in their own personal capacity, executed a $500,000.00 promissory note to The Federal Land Bank of St. Louis, which later became AgriBank, FCB, and Respondent in this action (hereinafter referred to as "AgriBank"). The note was secured by a deed of trust, with a power of sale provision in the event of default, on 3,736 acres of farm property located in Hickory

County, Missouri (hereinafter referred to as "the property").

Cross Timbers suffered financial reverses leading to its default under the note. On February 12, 1992, Agribank informed Cross Timbers that it had until March 31, 1992, to submit an application for loan restructuring.[1] No application was submitted within said time frame. Almost one year later, on February 16, 1993, a restructuring application was submitted by Cross Timbers, but Agri-Bank rejected it citing ineligibility for restructuring and the ongoing foreclosure proceedings. One day before the foreclosure sale was scheduled, Cross Timbers filed a Chapter 12 Bankruptcy in the United States Bankruptcy Court for the Western District of Missouri.[2] During the Chapter 12 Bankruptcy proceedings, AgriBank obtained relief from the automatic stay provisions of the Bankruptcy Code after a hearing on February 11, 1993, and commenced foreclosure of the property. Cross Timbers appealed this order to the United States District Court. One month later, Cross Timbers failed in its efforts to obtain confirmation of a reorganization plan in bankruptcy court and on March 9, 1993, the court dismissed the Chapter 12 proceeding.[3]

On the foreclosure date of March 12, 1993, Cross Timbers filed a new Chapter 11 Bankruptcy and notice was duly given to the substitute trustee prior to the sale. After a brief adjournment, the substitute trustee proceeded to cry the sale and the property was sold to AgriBank for $675,000.00. Thereafter, AgriBank sought approval from the bankruptcy court for its foreclosure sale, to which Cross Timbers filed lengthy objections. After an extensive hearing, the bankruptcy judge affirmed the foreclosure sale in its totality and ordered that AgriBank could proceed with its completion. This and other orders of the bankruptcy court were affirmed by the United States District Court for the Western District of Missouri. On June 16, 1993, a trustee's deed was filed and recorded conveying title of the property to AgriBank.

In November 1993, Cross Timbers filed a complaint against AgriBank in the United States District court seeking to keep AgriBank from selling the property to a third party and requesting an order to require AgriBank to sell the property to Cross Timbers for $522,000.00, the value placed on the property by the bankruptcy judge in the course of the Chapter 12 bankruptcy proceedings. The complaint also sought review of the decision of the Farm Credit Administration denying Cross Timber's request to prohibit AgriBank from selling the property to a third party. The request was made on the basis that Cross Timbers had a "right of first refusal" as a former owner of a property which had been foreclosed by a federal lending agency.[4] The United States District Court denied Cross Timber's requested relief and the judgment was affirmed by the Eighth Circuit Court of Appeals.

On May 6, 1994, AgriBank filed a Petition for Injunctive Relief against Cross Timbers and the Allisons to keep them from harvesting and selling crops growing on the foreclosed property. Prior to AgriBank dismissing this petition, Cross Timbers filed a Counter-claim in four counts against AgriBank seek-

1. *See* 12 U.S.C.A. § 2202a. All U.S.C.A. references are to West 1988.

2. Cross Timbers' predecessor, Allison Brothers, Inc., had initiated a Chapter 11 proceeding in 1988, in the United States Bankruptcy Court for the Western District of Oklahoma. Although confirmed, the debtor was unable to make the payments called for in that plan. Under the terms of that plan, AgriBank was authorized to foreclose. Once AgriBank undertook to foreclose, on May 21, 1992, a new Chapter 12 proceeding was initiated in the Western District of Missouri.

3. The dismissal was not final until ten days after the order had been entered. The bankruptcy judge ruled that a debtor was not entitled to maintain two bankruptcy actions at the same time. Since the Chapter 12 proceeding had not become final, the Chapter 11 proceeding was a nullity, warranting dismissal. The judge also intimated that the Chapter 11 proceeding had been filed solely to frustrate the foreclosure and that the debtor had already had its legal and factual questions at issue tried twice in an appropriate setting and that it should not be allowed to relitigate those same issues in a subsequent proceeding. *In Re Cross Timbers Ranch, Inc.*, 155 B.R. 215 Memorandum Opinion of Judge Frank W. Koger (W.D.Mo. June 3, 1993).

4. See 12 U.S.C.A. § 2219a(a).

ing a declaratory judgment: (1) that it had been deprived of its property without due process of law in a nonjudicial foreclosure and praying for cancellation of the trustee's deed; (2) for wrongful foreclosure; (3) for specific performance of the statutory obligation of AgriBank to sell the property to Cross Timbers for the fair market value of $522,000.00; and (4) for compensatory and punitive damages. AgriBank filed its Motion for Summary Judgment on Cross Timbers' Counterclaim, which was sustained by the trial court.

Cross Timbers now brings an appeal from the trial court's summary judgment holding, presenting six points of error.

## I

■ In Point I of its brief, Cross Timbers asserts that the trial court erred in granting summary judgment to AgriBank because the motion failed to comply with Rule 74.04[c][1] [5] in that the motion did not state with particularity in *separately numbered* paragraphs each material fact as to which the movant claims there is no genuine issue; did not make specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to any material fact; nor did it have a separate legal memorandum attached explaining why summary judgment should be granted.

■ Rule 74.04[c][1] required that:

Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts. Each motion for summary judgment shall have attached thereto a separate legal memorandum explaining why summary judgment should be granted and affidavits not previously filed that are relied on in the motion.

The purpose of this rule is to "apprise the opposing party, the trial court, and in turn the appellate court of the specific basis on which the movant claims [entitlement] to

summary judgment." *Snelling v. Bleckman,* 891 S.W.2d 572, 573 (Mo.App.1995) (Citation omitted.) A trial court is justified in denying a summary judgment because of the failure to comply with the requirements of Rule 74.04(c)(1). *McCarthy v. Community Fire Protection Dist. of St. Louis County,* 876 S.W.2d 700, 703 (Mo.App.1994).

■ We have repeatedly reversed judgments sustaining defective motions for summary judgments. *Wirt Dev. Corp. v. Lor-Mar Drilling Contractors, Inc.,* 884 S.W.2d 382 (Mo.App.1994); *Partney v. Reed,* 839 S.W.2d 694 (Mo.App.1992); *Johns v. Continental Western Ins. Co.,* 802 S.W.2d 196 (Mo.App.1991); *Mercantile Bank of Sikeston v. Moore,* 792 S.W.2d 653 (Mo.App.1990). However, if the issues are clear to the parties, the trial court, and the appellate court, respondent's failure to comply with the strict letter of the rule does not, *per se* preclude the granting of the summary judgment and its affirmance by an appellate court. *Mathes by Mathes v. Nolan,* 904 S.W.2d 353, 355 (Mo.App.1995).

The Motion for Summary Judgment is obviously lengthy and the issues are complex. However, in its 31 pages, the motion addresses itself to each of the four counts comprising Appellant's Counterclaim, citing facts and legal authorities, with specific reference to exhibits. The exhibits are appropriately indexed, referencing 390 pages wherein exhibits, affidavits, transcripts, judgments and pleadings are found.

■ Although the requirements of Rule 74.04[c][1] are not subject to waiver, *Miller v. Ernst & Young,* 892 S.W.2d 387, 389 (Mo. App.1995), it is, nevertheless, significant that the opposing party, Appellant herein, made no objection at the trial level to the violation of the precise requirement of the rule. On the contrary, Appellant filed its own 22 pages of responses, complete with exhibits and arguments comprising 191 pages contravening every material averment of Respondent. Thus the precise issues presented in Respondent's Motion for Summary Judgment were sufficiently clear so as to allow Appellant to

**5.** All Rule references are to Missouri Rules of Civil Procedure 1994.

make precise and appropriate responses thereto.

> We cannot conclude that it is in the interest of judicial efficiency or economy to adopt an absolute rule that failure to comply with the Rule precludes summary judgment when the failure to comply does not adversely affect the litigants' understanding and addressing the issues, the trial court deciding the issue, and the appellate court reviewing the judgment.

*Mathes by Mathes v. Nolan,* 904 S.W.2d at 355. The issues presented by the Motion for Summary Judgment were clear to the trial court and to this Court. Under the particular circumstances of this case, the fundamental purposes of Rule 74.04[c] have been met. *Plank v. Union Elec. Co.,* 899 S.W.2d 129, 133 (Mo.App.1995). Point I is denied.

## II

Cross Timbers argues in Point II of its brief that the trial court erred in granting summary judgment to AgriBank as to Count I of Cross Timbers' Counterclaim because: (1) Cross Timbers was not afforded a hearing before the non-judicial foreclosure sale of its properties, contrary to the Fifth Amendment to the United States Constitution; (2) the validity of the trustee's deed conveying the property was not affirmed by the bankruptcy court in that the trustee's deed was made June 16, 1993, *after* the bankruptcy hearing of May 20, 1993; and (3) the foreclosure sale was not affirmed by the bankruptcy court in a proceeding which determined the same issues so as to bar its Count I by principles of res judicata and collateral estoppel.

■ On appeal of a summary judgment we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The facts set forth by affidavits and associated records are considered as true unless otherwise contradicted by the non-moving party's responses. *Id.* The propriety of a summary judg-

ment is purely an issue of law. *Id.* Our review is essentially *de novo.* *Id.*

■ In Missouri, statutes [6] relative to the foreclosure of deeds of trust under power of sale are constitutional and have withstood attacks on the basis of violation of the due process clause of the Fifth Amendment to the United States Constitution (establishing a limitation on federal action) and the Fourteenth Amendment of the United States Constitution (establishing a limitation on state action). *See,* respectively, *Federal Nat'l Mortg. Ass'n v. Scott,* 548 S.W.2d 545, 549 (Mo. banc 1977) and *Federal Nat'l Mortg. Ass'n v. Howlett,* 521 S.W.2d 428, 431 (Mo. banc 1975). The reasoning being that the parties have a right to enter into contracts for nonjudicial foreclosures and that the power of sale exercised by a trustee during foreclosure is not principally derived from statute nor otherwise granted by the state. The fact that the parties may resort to the courts of Missouri to enforce rights secured by the extrajudicial foreclosure statutes does not involve significant governmental activity that rises to the level of constitutional protection. *See Scott* and *Howlett, supra.*

■ Even a wholly-owned federal entity can enforce a valid contractual provision for foreclosure under a power of sale as authorized by Missouri statutes without running afoul of the constraints of the Fifth Amendment. *Warren v. Gov't Nat'l Mortg. Ass'n,* 611 F.2d 1229, 1234 (8th Cir.1980) *cert. denied,* 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980); the standard being whether there is "a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [government] itself." *Id.* at 1232.

■ AgriBank is a Farm Credit Bank, a Federally chartered instrumentality of the United States, originally created by authorization through the Farm Credit Act of 1971 and is a creature of merger, as authorized by section 410 of the Agricultural Credit Act of 1987 (the "Act"). While there is authority

---

6. *See, inter alia,* §§ 443.290, 443.310, 443.320, 443.325, 443.380 and 443.410, RSMo 1986, in

effect at the time of the foreclosure sale herein.

that holds that AgriBank as a Farm Credit Bank is not an agent of the federal government for purposes of the Fifth Amendment, *See Hill v. Farm Credit Bank,* 726 F.Supp. 1201, 1208 (E.D.Mo.1989), its status as a federal instrumentality versus a federal agency is not germane since the foreclosure in question involves the power of sale provisions of a deed of trust as authorized by Missouri statutes and there is no requirement for a hearing before a foreclosure sale. *Scott* and *Howlett, supra.* Subpoint (1) is denied.

■■■ Cross Timbers' argues in its subpoint (2) that the bankruptcy court did not approve the trustee's deed dated June 16, 1993, thus making it invalid. This argument is specifically refuted, however, by the recitations of the bankruptcy court's judgment affirming the foreclosure sale, *infra.* Furthermore, this assertion must necessarily fail because Cross Timbers does not cite specific authority in support of its contention that the bankruptcy court should have affirmed the actions of the substitute trustee *after* the deed was transferred to AgriBank. *Wolfe v. State ex rel. Mo. Hwy. & Transp. Comm'n,* 910 S.W.2d 294, 298 (Mo.App.1995).

■■■ As to Cross Timbers' arguments in its subpoint (3) that the foreclosure sale was not affirmed by the bankruptcy court in a proceeding which determined the same issues as to bar Count I of its Counterclaim by principles of res judicata and collateral estoppel, we also find the issues against Cross Timbers.

After the foreclosure sale of March 12, 1993, AgriBank filed a First Amended Motion to Confirm Sale with the bankruptcy court, which was opposed by Cross Timbers in its Debtor's Objection to AgriBank FCB's First Amended Motion to Confirm Sale. The latter motion outlined in detail all of the alleged maladies relating to the foreclosure.[7] An extensive hearing on AgriBank's motion ensued in bankruptcy court and testimony was received relating to the alleged irregu-

larities of the foreclosure sale. Both William Dalton, attorney for Cross Timbers and Guy F. Allison, vice president of Cross Timbers testified at length. At the conclusion of the hearing, involving 131 pages of testimony, the bankruptcy judge made an express finding that "there was nothing improper about the foreclosure sale," denied Cross Timber's motion for sanctions against AgriBank for violation of the bankruptcy court's stay order and ordered that "AgriBank may proceed with the completion of the foreclosure sale." In its formal Memorandum Opinion the bankruptcy judge recited that:

> This matter came before the Court on a number of motions and counter motions and objections to motions.... Finally, a motion by Agribank (sic) to approved (sic) a sale conducted under a previous Chapter 12.... All of these motions were taken up at one time and the Court spent a number of hours in Court hearing these motions as a joint enterprise. Therefore, this opinion will address all of the issues raised by all of the motions and hopefully resolve same.

The court expressly determined that "it should approve the sale ... and affirms the sale of the real estate at foreclosure by Agribank (sic)." Following the entry of judgment on June 3, 1993, Cross Timbers appealed to the United States District Court for the Western District of Missouri, Central Division, and the judgment was affirmed on July 27, 1994.

The record before the trial court and now this Court clearly demonstrates that Cross Timbers had a full and fair opportunity to litigate the issue of the validity of the foreclosure sale in the bankruptcy court both before the sale took place (the February 9, 1993, lift of stay hearing) and after the foreclosure sale. The judgment of the bankruptcy court became final and binding on the parties. *Consumers Oil Co. v. Spiking,* 717 S.W.2d 245, 251 (Mo.App.1986).

---

7. Cross Timbers objected on the basis of irregularities attendant to the foreclosure proceedings; and on the basis that the sale was conducted without giving it an opportunity to restructure prior to sale as required by 12 U.S.C.A.

§ 2202a(b)(1) and (2) (West 1988) of the Farm Credit Act. Cross Timbers then requested sanctions, actual damages, costs, attorney fees, and punitive damages against AgriBank and its attorneys.

In *Norwood v. Norwood,* 353 Mo. 548, 183 S.W.2d 118, 123[5] (1944), the Missouri Supreme Court set out the rule of res judicata:

A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, *upon either the same or a different cause of action.* This doctrine, that *a fact or question* which has been actually and directly in issue in a former suit and has been judicially passed upon and determined by a domestic court of competent jurisdiction cannot be litigated again in a subsequent suit between the same parties or their privies, is simple and universally recognized in almost innumerable cases, the only difficulty or conflict being in its application to particular cases (italics in original).

■ More recently, in *Missouri Mexican Prods., Inc. v. Dunafon,* 873 S.W.2d 282, 284 (Mo.App.1994), the Missouri Court of Appeals set out the factors to be met in determining whether collateral estoppel applies to bar relitigation of issues. They are as follows:

1. The issue decided in the prior adjudication was identical with the issue presented in the present action.

2. The prior adjudication resulted in a judgment on the merits.

3. The party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

4. The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

■ Therefore, res judicata, referred to as "claim preclusion," precludes the same parties or those in privity from relitigating a cause of action. Collateral estoppel is referred to as "issue preclusion," and precludes the same parties or those in privity from relitigating issues which have been litigated previously. *State ex rel. M.A.F. by Bone v. Shelton,* 832 S.W.2d 4, 6 (Mo.App.1992).

■ Except for certain exceptions, discussed *infra* the rules of res judicata and collateral estoppel apply to decisions of the bankruptcy courts. *United States v. Schnick,* 66 B.R. 491, 494 (W.D.Mo.1986). Having had its day in court, Cross Timbers is barred by res judicata from relitigating the issues of the wrongfulness of the foreclosure, per Count I of its Counterclaim. *Prentzler v. Schneider,* 411 S.W.2d 135, 138 (Mo. banc 1966); *Norwood v. Norwood,* 353 Mo. 548, 183 S.W.2d 118, 123 (1944); *Missouri Mexican Prods., Inc. v. Dunafon,* 873 S.W.2d 282, 284 (Mo.App.1994). Subpoint (3) of Point II is denied.

### III

■ Cross Timber's subpoint (1) of Point III contends that the trial court erred in granting summary judgment as to Count II of its Counterclaim which sought a declaration that the nonjudicial foreclosure sale was void because the substitute trustee failed to conduct it in a fair and impartial manner. In the May 20, 1993, hearing in bankruptcy court to confirm the foreclosure sale, the exact objection relating to the manner of holding the non-judicial foreclosure sale was taken up and overruled by virtue of the bankruptcy judge's findings. See Point II, subpoint (3), *supra.* In his findings at the conclusion of the foreclosure confirmation hearings on May 20, 1993, the bankruptcy judge expressly stated that "there was nothing improper about the foreclosure sale." This claim has previously been litigated between the parties herein and Cross Timbers is barred by the principles of res judicata from asserting it anew. *Norwood v. Norwood,* 183 S.W.2d at 123. Subpoint (1) is denied.

■ In subpoint (2) of Point III, Cross Timbers asserts that the trial court erred in granting summary judgment because Agri-Bank was not entitled to a judgment as a matter of law because the substitute trustee held the foreclosure sale without complying with the provisions of the Act according restructuring rights to Cross Timbers.

The record shows that Cross Timbers had an opportunity to restructure the loan both under the provisions of 12 U.S.C.A. § 2202a, and pursuant to its Chapter 12 bankruptcy, but failed to do so, first by neglecting to complete the restructuring request under 12 U.S.C.A. § 2202a, in a timely fashion, and on its merits in bankruptcy court, by failing to obtain approval of its reorganization plan. While there is no requirement that there be a successful bankruptcy restructuring prior to obtaining restructuring rights under the Act, Cross Timbers' failure to successfully restructure in bankruptcy court lends credence to AgriBank's negative responses to Cross Timbers' tardy application for restructuring under § 2202a of the Act.

 Farm credit system borrowers under the Act are accorded certain opportunities to restructure a distressed loan in that there is a requirement for a farm credit bank to send a written notice to the borrower advising the borrower of its restructuring rights, together with the bank's distressed loan policy. The Act's provisions require that this notice, together with the bank's own distressed loan restructuring policy, be sent to the borrower at least 45 days before commencing the foreclosure process. Affidavits filed herein show that on February 12, 1992, AgriBank duly sent appropriate notice to Cross Timbers' predecessors in interest notifying them of their restructuring rights and the bank's restructuring policy which required that the debtor make application to do so no later than 45 days from the day of the notice. The bank set the application deadline for March 31, 1992. No application was submitted by March 31, 1992, and accordingly, AgriBank commenced foreclosure proceedings. Whereupon, a Chapter 12 proceeding was filed by the debtors (now Cross Timbers) to attempt a restructuring of the loan in bankruptcy. However, this latter action met with failure and the Chapter 12 proceeding was ultimately dismissed by the bankruptcy court on March 9, 1993. It was then, toward the end of the Chapter 12 bankruptcy process, that Cross Timbers submitted its restructuring application on February 16, 1993, to AgriBank, pursuant to the Act. Having waited almost a year before submitting the restructuring application under the Act's provisions, Cross Timbers cannot complain of its refusal by AgriBank, particularly in light of the bankruptcy court's determination on February 4, 1993, that "effective reorganization of the Debtor is remote and unlikely to occur, the Court having found that two Plans of Reorganization [previously submitted in bankruptcy proceedings] filed by the Debtor were not feasible and the Court having refused to confirm said proposed Plans." In order to take advantage of the Act's restructuring provisions Cross Timbers was obligated to seasonably submit its restructuring application, particularly when its delay worked to the prejudice and disadvantage of AgriBank. *See Hagely v. Board of Educ.,* 841 S.W.2d 663, 669 (Mo. banc 1992).

While Cross Timbers cites *Lillard v. Farm Credit Servs.,* 831 S.W.2d 626 (Ky.App.1991) as being supportive of its position, it can be distinguished on the facts. In *Lillard* the debtor provided an appropriate application to the lender within 45 days (as opposed to over 300 days on the part of Cross Timbers) thereby giving rise to a reasonable possibility that the mortgagee in that case acted arbitrarily and without good faith which then became a matter for jury determination. In the case at hand, the lateness of the application combined with little likelihood of a successful restructuring, supports the trial court's determination that no genuine issue of material fact relating to the restructuring process remained to be decided.

 It is also noteworthy that the Kentucky court acknowledged that a majority of the decisions on this issue hold that borrowers do not have any implied right of action under the Act, *Id.* at 628, citing *Harper v. Federal Land Bank,* 878 F.2d 1172, 1173 (9th Cir.1989) *cert. denied,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990) and *Zajac v. Federal Land Bank,* 909 F.2d 1181, 1183 (8th Cir.1990). In *Yoest v. Farm Credit Bank of St. Louis,* 832 S.W.2d 325, 329 (Mo. App.1992), the Western District Court of Appeals held that [the debtor] did "not have a private right of action under the Agricultural Credit Act of 1987 to enforce the Act's borrowers' rights provisions." (Citations omitted.) Therefore, as a matter of law, Cross

Timbers' Counterclaim must fail because Cross Timbers has neither an express or implied private right of action in state or federal courts to enforce the borrower's rights provisions, e.g., restructuring rights, under the Act. The pleadings, affidavits and exhibits establish that there is no genuine issue of material fact remaining on the issue of the loan restructuring. That combined with the fact that Cross Timbers has no private right of action to enforce the borrower's rights provision of the federal law shows that the trial court correctly granted summary judgment on Cross Timbers' Counterclaim, Count II. Therefore, subpoint (2) of Point III is denied.

## IV

■ Cross Timbers also argues that the trial court erred in granting summary judgment to AgriBank as to Cross Timbers' Counterclaim, Count III. Therein, Cross Timbers sought specific performance of its right under the Act to purchase the property at its appraised fair market value of $522,000.00, a figure Cross Timbers claims was previously determined by the bankruptcy court in its Chapter 12 proceedings.

Cross Timbers argues that under the provisions of 12 U.S.C.A. § 2219a[a], it was entitled to a first right of refusal to buy back the foreclosed property within 15 days after the lender first elects to sell the acquired real estate to a third party.

The statute requires a Farm Credit System institution to sell a property back to the previous owner only if the offer is to purchase at the appraised value. If the offer is less than the appraised value the institution *may* accept or decline the offer. See 12 U.S.C.A. § 2219a[b][3] and [4].

Cross Timbers asserts that during the course of the Chapter 12 bankruptcy proceedings the bankruptcy judge determined that the fair market value of the property was $522,000.00 and that by principles of res judicata and collateral estoppel AgriBank was estopped from selling the property at a value higher than $522,000.00 and, therefore, was required to sell the property to Cross Timbers. AgriBank, while agreeing with the asserted provision of the law, disagrees that the bankruptcy court judge was an "accredited appraiser" as that term is used in the statute.

■ The only direction provided by the Bankruptcy Code on the valuation of collateral is set forth in 11 U.S.C.A. § 506[a] which provides that: "... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." Bankruptcy courts are frequently called upon to determine the value of a particular claim more than once during the same case. When such a situation arises the court is not bound by its earlier determination. *See Ahlers v. Norwest Bank Worthington,* 794 F.2d 388, 398 (8th Cir.1986), *rev'd on other grounds,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). The value established in a bankruptcy proceeding is made for the limited purpose of the specific matter or issue then pending before the court and for no other purpose. *Barash v. Public Fin. Corp.,* 658 F.2d 504, 512 (7th Cir.1981). "The focus of § 506 is directed at (1) the purpose of the valuation and (2) the proposed disposition or use of the property." *In re Frost,* 47 B.R. 961, 963–64 (D.Kan.1985). The 4th Circuit has held in *In re Snowshoe Co., Inc.,* 789 F.2d 1085, 1088–89 (4th Cir.1986) that:

> It is clear from a reading of section 506 of the Bankruptcy Code and its accompanying legislative history that estimates of value made during bankruptcy proceedings are 'binding only for the purposes of the specific hearing and ... [do] not have a *res judicata* effect' in subsequent hearings.

(Footnote omitted.) (Italics in original.)

Consequently, Cross Timbers cannot rely on the principle of either res judicata or collateral estoppel to force AgriBank to accept the appraised value of $522,000.00 as determined during the Chapter 12 proceeding by the bankruptcy court. Using its selected appraiser, AgriBank obtained an appraisal of $747,000.00 on the property. Cross Timbers was offered the property for the sum of $747,000.00 and rejected the offer. Where-

upon, AgriBank proceeded to sell the property to a third party.

■ More importantly, under the provisions of 12 U.S.C.A. §§ 2001–2279aa–14, Cross Timbers does not have either an express or implied right of action to enforce the statutes' provisions relating to a first right of refusal. *See Jarrett Ranches, Inc. v. Farm Credit Bank*, 128 B.R. 263, 264 (D.S.D.1990), *See also Zajac v. Federal Land Bank*, 909 F.2d 1181, 1183 (8th Cir.1990); *Harper v. Federal Land Bank*, 878 F.2d 1172, 1177 (9th Cir.1989); *Griffin v. Federal Land Bank*, 902 F.2d 22, 24 (10th Cir.1990). The practical effect of the foregoing holdings is that Cross Timbers has no other recourse to force Agri-Bank to sell the property to Cross Timbers under its rights of first refusal under the Act. It did seek the Farm Credit Administration's intervention under 12 U.S.C.A. §§ 2261–63 (authorizing cease and desist orders for violation of its laws, rules or regulations). The record shows that the Farm Credit Administration declined to take enforcement action against AgriBank and upon judicial review under 5 U.S.C. § 700, et seq., the United States Court for the Western District of Missouri dismissed Cross Timbers' complaint together with its request for a restraining order. *Cross Timbers Ranch, Inc. v. Farm Credit Admin.*, No. 93–3448–CV–S–4 (W.D.Mo. Feb. 10, 1994) (order dismissing complaint). On appeal, the Eighth Circuit Court of Appeals sustained the action of the district court, concluding that the Farm Credit Administration's decision not to seek enforcement against AgriBank was "an action 'committed to agency discretion by law' and was not subject to judicial review." (Citing 5 U.S.C. § 701). *Cross Timbers Ranch, Inc. v. Farm Credit Admin.*, No. 94–1382, slip op. at 2 (8th Cir. Nov. 17, 1994).

The matter is, therefore, settled. The trial court was justified in finding that there was no material fact remaining to be determined relating to Cross Timbers' rights to first refusal and the court properly entered summary judgment as to Count III of Cross Timbers' Counterclaim. Subpoints (1) and (2) of Point IV are denied.

V

Cross Timbers' last Point alleges trial court error in granting summary judgment as to Count IV of its Counterclaim, seeking compensatory and punitive damages against AgriBank for wrongful foreclosure. This point is denied.

■ As has previously been held, there was no wrongful foreclosure, hence there can be no damages flowing from this allegation. See points II, supra. Federal instrumentalities, such as AgriBank, a farm credit bank, are immune from claims for punitive damages. *Rohweder v. Aberdeen Prod. Credit Ass'n*, 765 F.2d 109, 113 (8th Cir.1985). *Yoest v. Farm Credit Bank*, 832 S.W.2d at 330. Lastly, since Cross Timbers has no implied private right of action available to enforce the provisions of the Agricultural Credit Act of 1987, neither can it pursue a claim for either compensatory or punitive damages against AgriBank. *Wiener v. Farm Credit Bank*, 759 F.Supp. 510, 523–25 (E.D.Ark.1991), *aff'd*, 975 F.2d 1350 (8th Cir.1992).

The judgment is affirmed.