Gregory F. ALLISON and Holly D. Allison, Plaintiffs/Appellants,

v.

AGRIBANK, FCB, Defendant/Respondent.

No. 21112.

Missouri Court of Appeals,
Southern District,
Division One.

May 21, 1997.

Motion for Rehearing or Transfer
Denied June 11, 1997.

Application to Transfer Denied
Aug. 19, 1997.

David T. Hold, Campbell, Holt & McCue, Kansas City, for plaintiffs/appellants.

Mark G. Arnold, St. Louis, for defendant/respondent.

Before BARNEY, P.J., and GARRISON and PREWITT, JJ.

PER CURIAM.

Appellants Gregory F. Allison and Holly D. Allison, husband and wife, (Allisons) appeal from the trial court's order granting summary judgment in favor of Respondent AgriBank, FCB (AgriBank) on the Allisons' claim for breach of a right of first refusal to purchase real property. The Allisons claim five points of trial court error. We find no

trial court error. At the time they filed the instant action, the Allisons resided in Hickory County, Missouri, on the real property, consisting of 3,736 acres, that is the subject of this dispute. At all times relevant to this action, the Allisons owned 49% of the shares of stock of Cross Timbers Ranch, Inc., (Cross Timbers) an Arkansas corporation originally known as Allison Brothers, Inc. Gregory Allison was a vice president of Cross Timbers. The owners of the remaining 51% of the shares of stock were Gregory Allison's parents, William Allison and Mallie A. Allison.

The parties herein, together with Gregory Allison's parents, have engaged in protracted litigation, relating to the real property, on and off over the past nine years. To place the instant action in proper perspective it is necessary to recite pertinent facts taken from appellate cases, without specific quotes, previously considered by this Court, to-wit: *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 263 (Mo.App.1996); *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 256 (Mo.App.1996); *AgriBank FCB v. Allison*, 907 S.W.2d 229 (Mo.App.1995).

## I.

AgriBank, successor in interest to The Federal Land Bank of St. Louis, is a Farm Credit Bank, a Federally chartered instrumentality of the United States, originally created by authorization of the Farm Credit Act of 1971 and is a creature of merger, as authorized by § 410 of the Agricultural Credit Act of 1987 (the "Act").

In 1978, Allison Brothers, Inc., and William E. Allison and Mallie A. Allison in their personal capacity, executed a $500,000.00 promissory note to the Federal Land Bank of St. Louis. The note was secured by a deed of trust, with a power of sale provision in the event of default, on the same 3,736 acres of farm property heretofore mentioned.

Cross Timbers suffered financial reverses leading to its default under the note and AgriBank undertook foreclosure proceedings. One day before the foreclosure sale was scheduled, Cross Timbers filed a Chapter 12 Bankruptcy in the United States Bankruptcy Court for the Western District of Missouri.[1] AgriBank obtained relief from the automatic stay provisions of the Bankruptcy Code. Subsequently, Cross Timbers failed in its efforts to obtain confirmation of a reorganization plan in bankruptcy court and on March 9, 1993, the court dismissed the Chapter 12 proceeding.

On the foreclosure date of March 12, 1993, Cross Timbers filed a new Chapter 11 Bankruptcy. The substitute trustee, nevertheless, proceeded to cry the sale and the property was sold to AgriBank for $675,000.00. Thereafter, AgriBank sought approval from the bankruptcy court for its foreclosure sale, to which Cross Timbers filed lengthy objections. After an extensive hearing, the bankruptcy judge affirmed the foreclosure sale in its totality and ordered that AgriBank could proceed with its completion.

On June 16, 1993, a substitute trustee's deed was filed and recorded, conveying title of the property to AgriBank.

In November 1993, Cross Timbers filed a complaint against AgriBank in the United States District Court of Missouri, Western District, seeking to keep AgriBank from selling the property to a third party and requesting an order to require AgriBank to sell the property to Cross Timbers for $522,-000.00. The complaint also sought review of the decision of the Farm Credit Administration denying Cross Timber's request to prohibit AgriBank from selling the property to a third party. The request was made on the basis that Cross Timbers had a statutory "right of first refusal" as a former owner of a property which had been foreclosed by a federal lending agency.[2] The United States

---

1. Cross Timbers' predecessor, Allison Brothers, Inc., had initiated a Chapter 11 proceeding in 1988 in the United States Bankruptcy Court for the Western District of Oklahoma. Although confirmed, the debtor was unable to make the payments called for in that plan. Under the terms of that plan, AgriBank was authorized to foreclose. Once AgriBank undertook foreclo-

sure, on May 21, 1992, the foregoing new Chapter 12 proceeding was initiated in the Western District of Missouri.

2. *See* 12 U.S.C.A. § 2219a(a). All U.S.C.A. references are to West 1988.

District Court of Missouri, Western District, denied Cross Timber's requested relief and the judgment was affirmed by the United States Eighth Circuit Court of Appeals.

It was during this course of time that there were failed negotiations between Cross Timbers and AgriBank relating to the leasing of the property to Cross Timbers.

On December 1, 1993, AgriBank made a demand for possession of the property effective December 8, 1993. AgriBank never collected rent from Cross Timbers after foreclosure.

In an unlawful detainer suit commenced December 14, 1993, by AgriBank against Cross Timbers, the latter admitted that it was in constructive possession of the property.[3] Cross Timbers alleged that it was properly in possession pursuant to the terms of an oral lease. AgriBank obtained a favorable jury trial verdict against Cross Timbers, granting AgriBank a right of immediate possession of the property.

In a memorandum in support of its post-trial motion, Cross Timbers asserted that it had orally leased the property from Agri-Bank in consideration of Cross Timbers' agreement to repair and maintain the property. The memorandum further asserted that:

[I]n reliance on the oral lease agreement kept on farming, maintained the farm property, moved, fixed fences, harvested crops, collected rents, maintained the books and records as requested, and did everything requested by [AgriBank].

The memorandum also asserted that Cross Timbers entered into the alleged lease "acting by its duly authorized officer Greg Allison." The memorandum identified Gregory Allison as the "officer and farm manager" and asserted that "the rent in the form of services was paid" by Cross Timbers.

The trial court entered its judgment in unlawful detainer against Cross Timbers, and on appeal, this Court affirmed the judgment. *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d at 262.

AgriBank also filed an unlawful detainer action against the Allisons on March 3, 1994.[4]

In that action, Gregory F. Allison filed an affidavit wherein he declared under oath, *inter alia*, that he was "present on the property only in his capacity as an officer and farm manager" for Cross Timbers, and his wife was "present on the property only in her capacity as his wife and helper." [5]

Additionally, in a memorandum filed in opposition to AgriBank's motion for summary judgment, Gregory Allison argued that "Gregory F. Allison and Holly Allison have never had actual possession in their individual right, but have at all times acted as officers and agents of Cross Timbers Ranch, Inc."

The trial court granted summary judgment in favor of AgriBank and the Allisons appealed.

In its opinion, this Court noted that "Defendants' [Gregory F. Allison and Holly Allison] answer admitted that they live in a house on the property in question but that Cross Timbers Ranch, Inc. (CTR) is in possession of the property." *AgriBank FCB v. Allison*, 907 S.W.2d at 230. This Court's opinion then recited that "Plaintiff's [Agri-Bank] motion also refers to [Gregory F. Allison's and Holly Allison's] judicial admissions that they occupy the property only as officers and agents of CTR and that they claim no individual interest in the property." *Id.* However, this Court invalidated the judgment and dismissed the Allisons' appeal because the judgment did not establish the existence of AgriBank's *unconditional* right to possession of the property, so as to permit issuance and processing of execution without resort to external proof and another hear-

3. CV693–066ACX, filed in the Circuit Court of Hickory County, Missouri. *See generally Agri-Bank FCB v. Cross Timbers Ranch, Inc.,* 919 S.W.2d 256 (Mo.App.1996).

4. CV694–12ACX, Circuit Court of Hickory County, Missouri. *See generally AgriBank FCB v. Allison,* 907 S.W.2d 229 (Mo.App.1995).

5. Pertinent provisions of the affidavit are set out below.

ing.[6] *Id.*

On May 6, 1994, AgriBank filed a petition for injunctive relief against Cross Timbers and the Allisons, together with Gregory Allison's parents, to keep them from harvesting and selling crops growing on the foreclosed property.[7] AgriBank subsequently dismissed this petition, but before doing so, Cross Timbers filed a counterclaim in four counts against AgriBank, seeking a declaratory judgment alleging wrongful foreclosure, cancellation of the substitute trustee's deed, specific performance of a statutory obligation of AgriBank to sell the property to Cross Timbers for $522,000.00, and for compensatory and punitive damages. The trial court granted AgriBank a summary judgment as to all of Cross Timbers' counts and this Court affirmed the judgment.

## II.

Within the month after this Court's opinions were handed down in *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 256 (Mo.App.1996) and *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 263 (Mo. App.1996), the Allisons filed the instant action. They sought specific performance, damages and injunctive relief for breach of contract by AgriBank of a private right of first refusal to purchase the real property on the same terms and conditions as offered to a third party.

In their lawsuit, the Allisons allege that on July 8, 1993, AgriBank's agents/representatives, Mike Titus and Steve Smith, entered into an agreement whereby AgriBank promised the Allisons the absolute right to re-purchase the property under the same terms and conditions offered to a third party. The Allisons state that this agreement was reduced to writing by letters issued from agents of AgriBank to them on August 16, 1993, and August 23, 1993, after acknowledging Allisons' attorney's August 13, 1993, letter confirming the agreement.

As consideration for the right of first refusal, the Allisons assert that they have maintained the property, preserved its integrity and prevented waste by entering into numerous activities on the property.

The Allisons pleaded that AgriBank breached the contract when it accepted an offer by the B.J. Strain Revocable Living Trust and the Nettie L. Strain Revocable Living Trust to sell the property to the trusts for $750,000. This is because the Strain/AgriBank agreement contained an explicit provision that required AgriBank to return $30,000.00 in earnest money the trusts had put up, in the event AgriBank could not give possession of the property to the trusts by the closing date (March 1, 1994).[8] The Allisons assert that when AgriBank conveyed a letter dated November 3, 1993, to the Allisons [and Gregory Allison's parents and Cross Timbers Ranch, Inc.,] offering each person and entity the right to purchase the property for $750,000.00, it did not contain the same provision for return of the earnest money in the event that AgriBank could not deliver possession.[9] The Allisons were given 30 days to exercise their right to re-purchase the property. They did not do so.

In the instant action, AgriBank filed alternative motions to dismiss and for summary judgment. The trial court entered an order granting the motion for summary judgment.

## III.

The Allisons raise five points of trial court error. After review of all points, we determine that Point Three is dispositive herein and it is denied.

---

**6.** Recall that in *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 256 (Mo.App.1996), issued March 21, 1996, this Court later affirmed a judgment granting AgriBank the right of possession of the real property in question as against Cross Timbers.

**7.** CV594–044CC, Circuit Court of Hickory County, Missouri. *See generally AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 263 (Mo. App.1996).

**8.** The agreement between AgriBank and the Strain trusts was signed November 2, 1993. During this time frame AgriBank had not obtained possession of the ranch from either Cross Timbers or the Allisons.

**9.** The Allisons maintain that neither they, nor Gregory Allison's parents nor Cross Timbers Ranch, Inc., received a copy of the AgriBank/Strain agreement until October 8, 1994.

AgriBank moved for summary judgment on the basis that the Allisons' claim for breach of their private right of first refusal agreement is barred by lack of consideration. In Point Three the Allisons asseverate that a genuine issue of material fact relating to the consideration given by the Allisons to Agri-Bank. Therefore, AgriBank's motion for summary judgment should not have been granted. The Allisons argue that Gregory Allison's continued management of the ranch, both in his individual and corporate capacity, including the harvesting of crops, collection of rents and the prevention of waste, constituted consideration for an agreement for a right of first refusal on the real property.[10]

■ In considering an appeal from the entry of a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The review is essentially *de novo* with the appellate court employing the same tests as should be employed by the trial court in deciding whether to grant the motion. *Id.* The propriety of a summary judgment is purely an issue of law. *Id.* "Summary judgment is granted only where no genuine issue of material fact exists, and judgment is proper as a matter of law." *Cash v. Benward,* 873 S.W.2d 913, 915 (Mo.App.1994) (citing Rule 74.04(c)(3), Missouri Rules of Civil Procedure (1994)). A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *Cash,* 873 S.W.2d at 915. The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question. *Id.* at 916. A defending party may establish a right to judgment by showing facts that negate the facts of *any one* of the claimant's elements; that the non-movant has not and will not produce sufficient evidence to allow a trier of fact to find the existence of *any one* of the elements; or that there is no genuine dispute as to the existence of *each* of the facts neces-sary to support a properly-pleaded affirmative defense. *Id.*

■ When a moving party makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to a judgment as a matter of law, the adverse party is not permitted to rest upon the mere allegations or denials of his pleadings. *ITT,* 854 S.W.2d at 381. The non-movant's *only* recourse is to show by affidavit, depositions, answers to interrogatories, or admissions on file that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *Id.*

■ A right of first refusal, also known as a preemption or a preemptive right, requires the seller, when or if he or she decides to sell, to first offer the property to the holder of the right, either at a stipulated price or at the price and on the terms the seller is willing to sell. *Unlimited Equip. Lines v. Graphic Arts Centre, Inc.,* 889 S.W.2d 926, 932 (Mo.App.1994). A preemption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he or she is willing to part with ownership. *Hendricks v. Northcutt,* 820 S.W.2d 689, 692 (Mo.App. 1991). A preemption does not give its holder the power to compel an unwilling seller to sell; it merely requires the owner, when and if he or she decides to sell, to offer the property first to the person entitled to the preemption, at the stipulated price. *Id.* Once the seller elects to sell, the holder has an option to purchase in accord with the terms of the agreement. *Unlimited Equip.,* 889 S.W.2d at 932. When the owner arrives at the decision to sell, then the offeree has a short-lived option to purchase in accordance with the terms of his or her agreement. *Gilmore v. Letcher,* 508 S.W.2d 257, 262 (Mo. App.1974). Once the offeree accepts the offer by exercising his or her option, the contract of sale becomes complete and enforce-able. *Id.* Although a right of first refusal is

---

**10.** Allisons' allegations of a private right of first refusal should not be confused with a statutory right of first refusal as provided in 12 U.S.C.A. § 2219a(a). *See* discussion at *AgriBank FCB v. Cross Timbers Ranch, Inc.,* 919 S.W.2d 263, 271–72 (Mo.App.1996).

most frequently given in connection with the sale or lease of real estate, it can be given with respect to any matter which is subject to contract. *Unlimited Equip.*, 889 S.W.2d at 932.

As a general rule, consideration is a necessary element for establishing the existence of a valid contract. *Earl v. St. Louis University*, 875 S.W.2d 234, 236 (Mo. App.1994). A right of first refusal must be supported by consideration or its equivalent. 3 CORBIN ON CONTRACTS § 11.3, at 470 (Rev. ed. 1996). In like manner, an option must be supported by consideration. *Wehmeier v. Public School Retirement System*, 631 S.W.2d 893, 896 (Mo.App.1982). The burden of showing legally sufficient consideration rests on the party relying on the contract, and whether consideration is sufficient to establish a contract is normally a question of law for the court and not a question of fact for the jury. *Earl*, 875 S.W.2d at 236–37.

Probative evidence shows that by his own admissions,[11] Gregory Allison performed services as an officer and manager on behalf of Cross Timbers exclusively, in conjunction with Cross Timbers' obligations to AgriBank.

Because there was no consideration flowing from the Allisons to AgriBank for the alleged contract for right of first refusal, we determine that there is no enforceable contract for a right of first refusal. *See Earl*, 875 S.W.2d at 236.

It is unquestioned that Gregory Allison was an officer of Cross Timbers. Also, there is no dispute that Cross Timbers considered Gregory Allison its agent, doing its bidding in pursuance of its objectives as it perceived them. In case number CV693–066ACX,[12]

Cross Timbers argued in its Suggestions of Defendant Cross Timbers Ranch, Inc., in Support of Motion for Judgment Notwithstanding the Verdict, that:

1. [P]laintiff [AgriBank] on July 8, 1993, acting by its authorized agent Mike Titus, agreed with defendant [Cross Timbers] acting by its duly authorized officer Greg Allison, that [Cross Timbers] should remain in lawful possession of the real property and continue to farm the real property as [Cross Timbers] had farmed in the past.

2. [AgriBank] entered into an oral lease with [Cross Timbers] on July 8, 1993, and [Cross Timbers], in reliance on the oral lease agreement, kept on farming, maintained the farm property, mowed, fixed fence, harvested crops, collected rents, maintained the books and records as requested, and did everything requested by [AgriBank] of [Cross Timbers].

3. [T]he consideration, including maintaining and keeping the farm property up and enabling [AgriBank] to show the property to prospective purchasers, was paid by [Cross Timbers] in the form of requested services, and [AgriBank] at no time demanded the payment of money rent, but requested rent in the form of services.

4. [AgriBank's] agents and employees visited the farm property, met with Greg Allison, its officer and farm manager, had coffee with Greg Allison and his wife.

In case number CV694–12ACX,[13] in his affidavit filed on November 13, 1994, defending against an unlawful detainer suit filed against him, his wife and parents, Gregory F. Allison swore that:

1. He was "Vice President of Cross Timbers Ranch, Inc."

2. He was "the farm manager for Cross Timbers Ranch, Inc."

---

**11.** In order for a statement of a party to be competent as an admission against interest, it is not necessary that it be a direct admission of the ultimate facts in issue, and it may be competent if it bears on the issue incidentally or circumstantially. *Around the World Importing, Inc. v. Mercantile Trust Co.*, 795 S.W.2d 85, 89 (Mo.App. 1990). Abandoned pleadings may constitute such admissions, as do interrogatories from other lawsuits. *Waters v. Barbe*, 812 S.W.2d 753, 759 (Mo.App.1991). Like interrogatories, affidavits are sworn statements that may constitute admissions against interest. *See generally Benner*

*v. Johnson Controls, Inc.*, 813 S.W.2d 16, 19 (Mo.App.1991).

**12.** *See generally AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 256 (Mo.App.1996).

**13.** *See AgriBank FCB v. Allison*, 907 S.W.2d 229 (Mo.App.1995). The filing of the affidavit took place less than a month after the Allisons say that they received the full particulars of the Strain/AgriBank sales agreement.

3. "He and his wife Holly [had] never claimed to have a personal right of possession of the property known as the Cross Timbers Ranch."

4. "That he presently resides on Cross Timbers Ranch but has never made a claim of individual right of possession, *but is present on the property only in his capacity as an officer and farm manager for the corporation.*" (emphasis added).

Additionally, in CV694–12ACX, the Allisons filed Suggestions in Opposition to Plaintiff's First Amended Motion for Summary Judgment. In these suggestions the Allisons maintained that "Gregory F. Allison and Holly Allison have never had actual possession in their individual right, but *have at all times acted as officers and agents of Cross Timbers Ranch, Inc.*" [14]

It is not sufficient to defeat a summary judgment that the applicant's claim or defense might be subject to some hypothetical doubt, and that it may lack unassailable certainty. *Student Loan Mktg. Ass'n v. Raja,* 878 S.W.2d 830, 831 (Mo.App.1994). The probative evidence shows that the Allisons were living on the ranch and that Gregory Allison was "present on the property only in his capacity as an officer and farm manager of the corporation." The evidence shows that there is no genuine doubt but that Gregory Allison performed his tasks and services exclusively on behalf of Cross Timbers and not for himself, his wife, or AgriBank. The lower court did not err in granting AgriBank's motion for summary judgment. In view of the foregoing, all other allegations of error are moot. All other motions filed herein are denied.

Judgment affirmed.

---

**14.** Rule 55.03(b), Missouri Rules of Civil Procedure (1995) states, in pertinent part, that:

(b) By presenting or maintaining a claim, defense, request, demand, objection, contention, or argument in a pleading, motion, or other paper filed with or submitted to the court, an attorney or party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that:

....

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

*Id.; see also Silver Dollar City, Inc., v. Kitsmiller Const. Co., Inc.,* 931 S.W.2d 909, 917 (Mo.App. 1996).