In re Teresa Victoria CASAGRANDE, Debtor.

NOVA HOME HEALTH SERVICES, INC., Plaintiff,

v.

Teresa Victoria CASAGRANDE, Defendant.

Bankruptcy No. 91–43051–ABF.
Adv. No. 91–4309–3.

United States Bankruptcy Court, W.D. Missouri.

June 19, 1992.

Diane E. Moritz, Kansas City, Mo., Michael M. Moran, Overland Park, Kan., for plaintiff.

Jay Grodsky, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This is a dischargeability action brought by Plaintiff Nova Home Health Services, Inc. ("Nova") against the debtor in the above-styled bankruptcy proceeding. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). I find that the debtor's obligations to Nova are dischargeable.

The following, pursuant to Fed.R.Civ.P. 52 as made applicable to this adversary proceeding by Fed.R.Bankr.P. 7052, constitute this Court's findings of fact and conclusions of law as announced at the conclusion of the hearing on April 29, 1992 and subsequently supplemented and amended in accordance herewith.

Nova is a provider of health care services to patients in their home. Nova's home office is in Arizona. Among the services provided by Nova to its patients are medical social work services. Such social work services are, in certain circumstances, reimbursable by Medicare. Debtor is a social worker. From March 1, 1988, until July 11, 1989, debtor worked for Nova as an independent contractor out of its Kansas City office. As such, she was paid a set fee of $30 plus mileage for each visit she made to a patient's home, provided that the charge for such visit fit within the Medicare guidelines. If so, Nova was in turn paid a higher fee by Medicare for the visit, $68.08 for Missouri, and $45.28 for Kansas patients. Such visits are generally authorized by a doctor or a nurse, and are for the purpose of determining the types of services which might be needed by a homebound patient. Under prevailing practices in the industry, a social worker will often follow up such visits with telephone calls to determine, for example, that the necessary services have been provided. Such calls are not reimbursable by Medicare. A social worker will often also provide assistance to a patient by, for example, going to the drug store or grocery store when no one else is available to perform such chores. Once again, such services are not compensable under Medicare regulations.[1]

Nova contends, and debtor admits, that in a number of instances the debtor charged Nova, and Nova charged Medicare, for work which was not compensable under Medicare regulations. During July, 1989, a Nova area manager, based in Atlanta, Georgia, learned that false documentation had been submitted by the debtor in connection with in-house visits. (Tr. I at 43.)

Apparently, one of the nurses in Kansas City had learned of irregularities, and notified others within the company. (Tr. I at 24–26.) As required by law, Nova promptly notified Medicare. At that point, Medicare demanded that Nova reimburse it for approximately $34,000 in charges for visits which the debtor had claimed to have made. Such figure was based on Medicare's determination that false documentation was submitted in connection with 504 such visits. The Medicare number was an extrapolation based on a survey conducted of a small number of clients assigned to the debtor. (Tr. I at 100, 103.) In response to the Medicare demand, the owners of Nova conducted an audit of the patients assigned to the debtor. As part of such audit, one of the owners and an employee contacted the patients who had been assigned to debtor. As a result, the audit concluded that Nova, and debtor, had been paid for 227 Missouri and 6 Kansas visits which did not fit within the Medicare guidelines for reimbursement. Nova has reimbursed Medicare for the charges associated with that number of visits. Although no specific evidence was offered as to the amount paid, it appears that Nova would have reimbursed Medicare for approximately $15,725.84.

On April 19, 1990, Nova filed suit against debtor in the Circuit Court of Jackson County, Missouri, seeking actual and punitive damages for fraud, misrepresentation, breach of contract, and negligent misrepresentation. Debtor filed for relief under Chapter 7 of the Bankruptcy Code on September 22, 1991. As a result, the state court case was never tried. On December 23, 1991, Nova filed in this Court a Complaint alleging that it holds a claim against the debtor in the amount of $30,000, and that such debt should be excepted from the debtor's discharge. The Complaint relies on 11 U.S.C. § 523(a)(4). That section provides as follows:

§ 523. *Exceptions to discharge.*

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title

---

**1.** It should be noted that under her agreement with Nova, debtor was entitled to be paid $10 per hour for such follow-up work, whether or not Nova was reimbursed by Medicare. (Ex. 2.) The evidence, however, indicates that this hourly rate was not paid to debtor.

does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). In order to succeed on a dischargeability objection under section 523(a), the objecting party has the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

On January 7, 1992, the Court issued its standard Pretrial Order and Notice of Trial. Among other things, that Order provided that on or before seven (7) days prior to the trial, the parties should file and serve lists of witnesses and exhibits, and exchange marked copies of the exhibits. The debtor complied with the requirements of such Order.[2] Nova did not.

A trial was conducted on April 28 and 29, 1992. At trial, Nova attempted to offer its internal audit as proof that false documentation had been submitted for 233 patient visits. In relying on such audit, Nova attempts to recover the charges which it paid back to Medicare. The audit, however, constitutes hearsay evidence, because it is based on unwritten and unrecorded conversations with patients who were never brought before the Court and who were never placed under oath. Nova contends, however, that the audit should be admissible into evidence under the "catch-all" exception to the hearsay rule. Fed.R.Evid. 803(24); *see also* Fed.R.Evid. 804(b). The "catch-all" provision reads as follows:

Rule 803. *Hearsay exceptions; availability of declarant immaterial*

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

24. Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will be best served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 803(24).

■ This exception to the hearsay rule is not available to Nova since Nova did not make available to debtor, in advance of trial, a copy of the audit, or the names of the patients who were relied upon in compiling the audit. Had Nova simply complied with the Court's pretrial order, and provided debtor with a list of the patients involved, debtor would have had the opportunity to conduct discovery to determine the accuracy of the audit. Since no advance notice was provided to debtor, she did not have a fair opportunity to meet such evidence and attack its trustworthiness, and the audit is therefore not admissible under the catch-all exception to the hearsay rule. *See Piva v. Xerox Corp.,* 654 F.2d 591, 596 (9th Cir.1981) (purpose of the notice requirement is to give adverse parties an opportunity to attack the trustworthiness of the evidence).

Nova also offered evidence that documentation submitted by debtor as to approximately 105 visits was not accurate. In certain instances, debtor charged for more than one reimbursable visit when only one such visit had been made. In others, her documentation put her in two

---

2. Debtor filed her List of Witnesses on April 7, 1992, 21 days prior to trial. Debtor did not offer any exhibits at trial, and so did not file a list of exhibits.

different homes at the same time. Debtor testified that she often did not prepare her documentation until the end of the week, so the times listed for certain visits were not precise. (Tr. II at 29.) The documentation prepared by the debtor and submitted to Nova also showed that she was on home visits during her regular working hours at a different job.[3]

In addition to seeking the monies it repaid to Medicare, Nova also requested damages for mileage charges paid to debtor, although no evidence was offered as to the amount of such charges. (Tr. I at 92.) In addition, Nova seeks damages for certain travel expenses incurred by one of the owners in going from Arizona to Kansas City and elsewhere in connection with the case. Nova also seeks to be compensated for time spent by employees and one of the owners in preparing the audit and responding to Medicare in connection with this situation. And, Nova seeks recovery of its attorney fees in the approximate amount of $8,500. (Tr. I at 95.)[4]

The debtor acknowledged that she had submitted documentation, and been paid, in an unknown number of cases where a compensable visit had not been made. (Tr. II at 89; Tr. II at 5.) However, she testified that she was told by her supervisors in Kansas City to alter her documentation so that the services rendered would be reimbursable by Medicare.[5] (Tr. I at 111; Tr. II at 99.) Also, she testified that in cases involving a patient who required more time than a usual visit would take, she was told by her supervisor to write up two visits even though only one had been made. (Tr. II at 81–82; Tr. II at 86–87; Tr. I at 111–112; Ex. 21 at 77–79.) She was told to follow that procedure on at least five occasions. (Tr. II at 104; Tr. II at 100–101.)

In some instances, she was paid for home visits where she simply had delivered prescriptions, and not provided compensable social services. (Tr. II at 7; Tr. II at 106; Tr. II at 101; Tr. I at 110–111.) In others, she had been called by the patient on the phone. In order to make her time compensable, she had been instructed by her supervisors to write up such calls as visits. According to debtor, she had been told by her supervisor to increase her number of visits so that the company's income would increase. (Tr. II at 107; Tr. II at 99; Tr. II at 111–112.) One way to accomplish this increase was to charge for services which otherwise would not be compensable. According to debtor, she never submitted documentation for visits where no services at all had been performed. She did, however, alter documentation so that the services performed would be compensable to Nova, and thereby to her as well. Also according to debtor, she has never been requested to, and has never altered, Medicare documentation for any employer other than Nova. (Tr. II at 89–90.)

Ann Horst, who worked at Nova at the same time as debtor, supported debtor's contention that Nova had condoned, and even encouraged, the alteration of records in the manner just described. Ms. Horst testified that she was asked to falsify records to comply with Medicare regulations. (Tr. I at 117.) She stated that supervisors in Kansas City asked social workers to record multiple visits when just one was made. According to Ms. Horst, this practice was known at Nova as "ghost visits". (Tr. I at 118.) Ms. Horst testified that she saw supervisors alter or falsify records, and that she herself resigned from

---

**3.** Debtor, during this time, had a daytime job with Trinity Lutheran Hospital, in addition to working for Nova as an independent contractor.

**4.** Nova's proof of damages was far from precise. For example, the owner who was most directly involved in this matter testified that she spent approximately 85 to 90 hours on the project, and that she believed her time is worth $50.00 per hour. (Tr. I at 57.) No evidence was offered as to her salary, or as to her basis for concluding that her time has that value to the

company. Similarly, she testified that approximately 80 hours of employee time was spent on the project, at a cost of either $800 or $1,000, without providing any basis for that conclusion. (Tr. I at 55–56.) And, as to attorneys fees, no documentation or detail whatever was offered to prove the reasonableness of such fees.

**5.** One of the supervisors was later accused of falsifying records, and was asked to leave Nova. (Tr. I at 10–11.)

Nova because she would not work under such circumstances. (Tr. I at 121.)

At the conclusion of the trial on April 29, 1992, I found in debtor's favor for a number of reasons. First, as shown, section 523(a)(4) provides for nondischargeability for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "Embezzlement, for purposes of this section, is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come. A plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used." *In re Belfry*, 862 F.2d 661, 662 (8th Cir.1988) (quotations omitted). Nova has failed to present evidence showing that the debtor's use of the funds was restricted in any manner or that debtor was not lawfully entitled to use the funds in the manner in which they were so used. Therefore, debtor's actions did not constitute embezzlement within the meaning of section 523(a)(4).

Larceny has been defined as "the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to [the taker's] use without the consent of the owner. As distinguished from embezzlement, the original taking of the property [must have been] unlawful." 3 King et al., *Collier on Bankruptcy* ¶ 523.14[3] at 523–114 (15th ed. 1992). A felonious intent must have been present at the time of the taking. *Id.* at 523–113. Based upon the evidence before the Court, I conclude that the debtor did not have a "felonious intent" toward Nova at the time of the alleged taking. The debtor's actions, therefore, did not constitute larceny for purposes of section 523(a)(4).

Thus, if Nova is to prevail, it must show fraud or defalcation while acting in a fiduciary capacity. According to a leading commentator, a fiduciary capacity is not created for purposes of this section where the fraud has been committed by "agents, bailees, brokers, factors, partners, and other persons similarly situated." 3 King et al., *Collier on Bankruptcy* ¶ 523.14[1][c], at 523–107–108 (15th ed. 1992). It has also been found that an employee does not, without more, act in a fiduciary capacity toward its employer. *See In re Gierman*, 106 B.R. 733, 737 (Bankr.M.D.Fla.1989) (debtor employed as loan officer not fiduciary to employer bank); *see also In re Long*, 774 F.2d 875, 878 (8th Cir.1985) (declining to extend corporation's duties to stockholder-employee in absence of express trust created by agreement or local law). The same would certainly hold true as to an independent contractor. The relationship between the debtor and Nova in this case reveals that the debtor did not act in a fiduciary capacity with respect to Nova. Therefore, a cause of action under section 523(a)(4) of the Bankruptcy Code was not proven.

In addition, Nova has not met its burden of proving one of the necessary elements to a cause of action for fraud, namely that the debtor acted with the intent to defraud Nova. *In re Van Horne*, 823 F.2d 1285 (8th Cir.1987). Surrounding circumstances from which intent may be inferred may be presented to establish the debtor's subjective intent to defraud a creditor. *Id.* at 1287.

The evidence suggests, and I so find, that debtor's supervisors at Nova altered documentation and encouraged her to do the same. The debtor admits her wrongdoing in submitting false or inaccurate documentation. (Tr. II at 89.) However, she believed that the services she performed for patients were necessary to their well-being. (Tr. II at 97.) She was told by her supervisors that such services should be documented so that she, and Nova, would be compensated by Medicare. (Tr. II at 99.) She was told by her supervisor to charge for extra visits which were not otherwise compensable. (Tr. II at 100–101, 104.) There is no evidence that the owners of the company, in Arizona, or the area manager, in Atlanta, were aware of what was taking place in Kansas City. However, the corporation is responsible for the actions of the supervisors. Debtor was led to believe that her actions were in the best

interest of Nova, as well as herself. Certainly, this weighs heavily on whether the debtor harbored the necessary subjective intent to defraud Nova in this case. Under these circumstances, I find that Nova has not demonstrated the intent to defraud necessary to make out a cause of action under section 523(a)(4). As reprehensible as the debtor's conduct may have been, Nova's section 523(a)(4) claim cannot stand. *See, e.g., In re Brawn,* 138 B.R. 327, 331 (Bankr.D.Me.1992).

On May 11, 1992, Nova filed a Motion for Clarification and Supplementation of Findings of Fact or in the Alternative New Trial. In such motion, Nova asks the Court to find that relief should be granted under section 523(a)(2) of the Bankruptcy Code. According to the motion, reference to section 523(a)(2) "inadvertantly [sic] was admitted [sic] in the last line of the Complaint Objecting to Discharge but ... was clearly intended to be included therein as the basis for denying discharge of the claimed indebtedness." (Mot. ¶ 15). Section 523(a)(2) provides an exception to discharge:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ Prior to considering Nova's request to proceed under section 523(a)(2), I should point out that if Nova is allowed to proceed under that section, the plain language of section 523(a)(2) limits Nova's damages to the money actually obtained by debtor by virtue of the alleged false pretenses, false

representations, or actual fraud. *See In re Levy,* 951 F.2d 196, 198 (9th Cir.1991).[6] Based on the admissible evidence offered, that would be $3,150, representing 105 visits for which the debtor was paid $30 each. The other damages sought, such as attorneys fees, travel expenses, and employee costs incurred by Nova, would not fit within the nondischargeability provisions of section 523(a)(2).

In its motion filed on May 11, 1992, Nova requests that the Court make certain clarifications and amendments to its April 29, 1992 oral findings of fact and conclusions of law. Alternatively, Nova requests that the Court grant it a new trial "on the grounds the judgment was 1.) contrary to the evidence as the admissions of the debtor showed fraud, 2.) the ruling of the court was erroneous as the Court relied solely upon [11 U.S.C. § 523(a)(4) ] as its basis, and 3.) want of fair opportunity to present evidence because the court refused to allow the nurses to testify what their patients told them (as their nurse) regarding medical treatment and visits not made by debtor."

At the outset, it should be pointed out that Nova's complaint in this adversary proceeding sought relief solely under 11 U.S.C. § 523(a)(4). At no time did Nova amend its complaint to include a request for relief under 11 U.S.C. § 523(a)(2). Nor did Nova move to have its pleadings amended to conform to the evidence at the close of the hearing.[7]

With respect to Nova's request that the Court make certain clarifications and amendments to its April 29, 1992 oral findings of fact and conclusions of law, the Court has done so in this Memorandum

---

**6.** "It should be noted that Section 523(a)(2) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 to provide that this exception is applicable to such property only 'to the extent obtained' by means of the actions specified...." 3 King et al., *Collier on Bankruptcy* ¶ 523.08, at 523–48 (15th ed. 1992). *See Muleshoe State Bank v. Black,* 77 B.R. 91 (N.D.Tex.1987), in which the district court held that when a debtor misrepresented that he would sell certain nonexistent property to gain an extension of a past due note and when there was no fraud with respect to the creation of the

note, only the amount misrepresented to gain the extension was nondischargeable. Thus, the court refused to follow *Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474 (11th Cir.1985), which arose prior to the 1984 Act.

**7.** Of course, Nova would appear to have difficulty proving fraud for purposes of section 523(a)(2)(A), where, as found above, it has not met its burden of proving fraud under section 523(a)(4).

Opinion to the extent permitted by the evidence and the applicable procedural rules.

The remainder of Nova's motion is essentially a request for a new trial or to alter or amend the Court's prior judgment pursuant to Fed.R.Civ.P. 59 and Fed.R.Bankr.P. 9023. The primary basis upon which Nova relies, aside from its challenge of the Court's findings discussed above, is that it should be allowed to include a cause of action under 11 U.S.C. § 523(a)(2). Rule 59, however, does not afford a party relief when the issue presented is one which could have been raised prior to the judgment. *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.1988), *cert. denied*, 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988); *Briggs & Stratton Corp. v. Baldridge*, 544 F.Supp. 667, 668 (E.D.Wisc.1982), *aff'd*, 728 F.2d 915 (7th Cir.1984), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 106, 83 L.Ed.2d 50 (1984) (Rule 59 does not contemplate relief when issue presented could have been, but was not, raised previously); *In re Kress Road Partnership*, 134 B.R. 309, 311 (Bankr.N.D.Ill. 1991) (purpose of rule not to give moving party another "bite at the apple" by permitting the arguing of issues and procedures that could and should have been raised prior to judgment). Nor should a motion under Rule 59 be used as a vehicle to relitigate matters previously decided by the court. *In re Jones*, 112 B.R. 975, 977 (Bankr.W.D.Mo.1989) (See, J.). A movant must show manifest error of law or fact or present newly discovered evidence in order to obtain relief on a Rule 59 motion. *Hagerman*, 839 F.2d at 414.

After reviewing the record in this case, I conclude that Nova has not shown any manifest error of law or fact or presented any newly discovered evidence to support its Rule 59 motion. In addition, I find that Nova cannot now come to this Court, after the conclusion of the hearing and entry of the judgment, and request a new trial on the assertion of a claim which could have been, but was not, raised prior to the judgment.

## CONCLUSION

Based on the foregoing, Nova's Motion for Clarification and Supplementation of Findings of Fact is granted in part in accordance with this Memorandum Opinion. Nova's Motion for a New Trial is denied. Consistent with the Order and Judgment entered May 1, 1992, the obligations owed by debtor to plaintiff are dischargeable.

IT IS SO ORDERED.