The AMERICAN LEGION DEPARTMENT OF MISSOURI INCORPORATED, Plaintiff,

v.

The HANOVER INSURANCE COMPANY, Defendant and Third–Party Plaintiff,

v.

Lowell Carey Bankhead, Third–Party Defendant.

No. 4:02–CV–0077MLM.

United States District Court, E.D. Missouri, Eastern Division.

Oct. 8, 2002.

Patrick J. McCarthy, William L. Weiss, St. Louis, MO, for Plaintiff.

Bernard A. Reinert, President, Issa K. Emeish, Reinert and Rourke, St. Louis, MO, for Hanover Insurance Co.

Barry L. Haith, Blumenfeld and Kaplan, St. Louis, MO, for Lowell Carey Bankhead.

### *MEMORANDUM AND ORDER*

MEDLER, United States Magistrate Judge.

This matter is before the court pursuant to the Motion for Summary Judgment filed by Defendant and Third–Party Plaintiff The Hanover Insurance Company ("Hanover" or "Defendant Hanover"). [20] Plaintiff The American Legion Department of Missouri Incorporated ("American Legion") and Third–Party Defendant Lowell Carey Bankhead ("Bankhead" or "Third–Party Defendant Bankhead") have filed Responses to Defendant Hanover's motion. Defendant Hanover has filed a Reply. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C § 636(c). [12]

### UNREFUTED FACTS

On June 7, 1996, Defendant Hanover and the American Legion entered into a written agreement, whereby Hanover was to provide insurance to the American Legion for employee dishonesty. In the top right hand corner of the first page of the agreement the words "COMMERCIAL CRIME, COVERAGE FORM A–BLANKET" appear. *See* Defendant. Ex F. The agreement's limit of insurance for employee dishonesty was $500,000, with a deductible amount of $2,500. The agreement's "Employee Dishonesty Coverage Form" states, in relevant part:

**A. COVERAGE**

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.

1. **Covered Property:** "Money," "securities," and "property other than money and securities".

2. **Covered Cause of Loss:** "Employee dishonesty." . . .

## C. DEDUCTIBLE

1. We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations . . .

2. You must:

(a) Give us notice as soon as possible of any loss of the type insured under this Coverage Form even though it falls entirely within the Deductible Amount

(b) Upon our request, give us a statement describing the loss . . .

## D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS: . . .

3. Additional Definitions

(a)"Employee Dishonesty" in paragraph A2 means only dishonest acts committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

(1) Cause you to sustain loss; and also

(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits) earned in the normal course of employment for

(a) The "employee"

Defendant. Ex. F. (emphasis in document).

According to a Memorandum and Order of the United States Bankruptcy Court for the Western District of Missouri, Third–Party Defendant Bankhead was the Adjutant of the American Legion, which position is the equivalent of the chief operating officer ("CEO") of a corporation. *See* Defendant. Hanover Ans., Ex. C ("Dec.") at 2. On May 7, 1999, Bankhead, and his wife, Charla Bankhead, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In their schedules, the Bankheads listed the American Legion as a general unsecured creditor with a debt in the amount of $3,500. In response to Interrogatories in the bankruptcy matter, Third–Party Defendant Bankhead stated that the $3,500 was the amount he owed the American Legion for airline tickets.

On August 31, 1999, pursuant to 11 U.S.C. § 523(a)(4), the American Legion filed a complaint in the Bankheads bankruptcy matter, objecting to the discharge of certain debts and alleging that the Bankheads' debt to the American Legion was in excess of $75,000, plus interest and that this debt was nondischargeable because of the Bankheads' "defalcation, embezzlement, and obtaining property by false pretenses, false representation and actual fraud." Dec. at 3. In particular, the American Legion claimed:

During the term of at least the last two years, Defendant Lowell Cary [sic] Bankhead, Jr., while acting in a fiduciary capacity, used his position as a salaried employee serving as adjutant of the Legion for defalcation and to fraudulently convert, without lawful and appropriate authority, funds belonging to [the American Legion] for the personal use

of himself and Defendant Charla Marie Bankhead.

Dec. at 3.

### Decision of the Bankruptcy Court:

The bankruptcy court concluded, however, that with the exception of $3,500.00, that Bankhead charged to the American Legion's American Express credit card for the purchase of airline tickets for his family, "the American Legion did not provide evidence that Lowell Bankhead committed any acts of positive or actual fraud, committed any intentional wrongs or committed acts of moral turpitude." Dec. at 7. The bankruptcy court reached this conclusion after hearing extensive evidence and testimony. In particular, the current Adjutant of the American Legion testified that the American Legion hired a law firm to investigate allegations that Bankhead misappropriated funds, but the current Adjutant did not suggest what he considered conduct of Bankhead which amounted to misappropriation. An attorney, Thomas Davis, testified that his firm was hired to investigate Bankhead. Davis provided the bankruptcy court with a list of American Express charges which he believed amounted to misappropriation of funds, and which were, therefore, nondischargeable under the fiduciary fraud provision of § 523(a)(4).

The bankruptcy court found that it was not satisfied that Davis conducted a thorough examination of the circumstances surrounding each of the American Express credit card charges prior to concluding that Bankhead misappropriated funds. See Dec. at 10. In regard to Davis's listing Bankhead's charges on the American Express card for gifts, supplies, books, newspapers, cigars, a portable phone, meals, hotel rooms, and travel memberships as misappropriated funds, the bankruptcy court found that no appointed official or employee of the American Legion testified that these charges were inappropriate. In regard to Davis's inclusion of Bankhead's use of a van owned by the American Legion in his list of inappropriate charges, the bankruptcy court found that no appointed official or employee of the American Legion testified that Bankhead's use of the van or related gas charges were inappropriate. See Dec. at 10.

Davis further testified before the bankruptcy court that, while Bankhead had an annual budget of $9,000, he exceeded that budget. Davis asserted that the amount by which Bankhead exceeded this budget, $22,000 per year in 1997 and 1998, represented misappropriated funds. The bankruptcy court rejected this argument and found that the budget overruns did not "equate with misappropriation of funds." Dec. at 11.

A certified public accountant, Michael Oldelehr, who is employed by Williams-Keepers, LLP, also testified, on behalf of the American Legion, before the bankruptcy court. Oldelehr testified that Williams-Keepers conducted an audit of the American Legion's expense accounts, for the purpose of "determining the scope and the magnitude of the dollar loss that was to be submitted for reimbursement under the surety bond for Lowell Bankhead." Dec. at 11. The figures submitted by Oldelehr at trial, pursuant to this audit, included $23,411.55 worth of transactions, which Oldelehr said were not supported by sufficient documentation to show they were for legitimate American Legion expenses and which should be included in the bond claim. The figures submitted also included $12,452.48 worth of transactions which Oldelehr categorized as "questionable"; they might be included in the bond claim, depending on a review of further documentation. The American Legion submitted as evidence to the bankruptcy court checks

written by Bankhead and his American Express credit card charges which were included in the summary prepared by the auditors.

The bankruptcy court concluded that neither Oldelehr's testimony nor the documentation which was submitted with his testimony satisfied the American Legion's burden to show that Bankhead defrauded the American Legion by misappropriating funds. As examples of the insufficiency of this evidence, the bankruptcy court noted that Oldelehr included, as a questionable expense, a check in the amount of $4,759.00 to the Tallman Insurance Agency. Oldelehr testified that he did not know if the American Legion had insurance with Tallman, and because the American Legion did not provide him information in that regard, he decided to place this $4,759.00 in the questionable category. Likewise, Oldelehr included a $1,500.00 check to a steamboat company in New Orleans in the questionable category, although he did not know if the American Legion's Missouri delegation had dinner on the steamboat when they attended the national convention in New Orleans. Additionally, Oldelehr included a check for $5,901.33 to Reynolds Collision & Alignment in the included category, when he did not know if this charge was for a vehicle owned by the American Legion. *See* Dec. at 13. Based on the testimony of Oldelehr, the bankruptcy court found that the Williams–Keepers' written report was unreliable and untrustworthy. The bankruptcy court further noted that Williams–Keepers' auditing staff did not follow-up on the suspect transactions prior to categorizing them either as included or questionable. After defining fraud under § 523(a)(4) of the Bankruptcy Code as positive fraud involving moral turpitude or intentional wrong, the bankruptcy court concluded that the American Legion failed to establish fraud under this provision.

The bankruptcy court further considered whether the American Legion established that Bankhead engaged in "fiduciary defalcation" in a fiduciary capacity under § 523(a)(4). Defalcation is defined more broadly than embezzlement and probably broader than misappropriation, according to the bankruptcy court. The bankruptcy court considered that defalcation does not require evidence of intentional fraud or intentional wrongdoing and includes "innocent default of a fiduciary who fails to account fully for money received." Dec. at 15 (citing *Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978 (8th Cir.1997)) (*Cochrane*). The court further noted that to be found liable for defalcation, a person need not have the intent to defraud and that defalcation may exist where a debtor misuses his position to gain personal benefit at the expense of a corporation. *See id.* Upon concluding that the American Legion did not establish conduct on Bankhead's part which amounted to defalcation, the bankruptcy court considered the above discussed testimony and evidence. In particular, the court concluded that the current Adjutant's testimony was unenlightening, and it disagreed with Davis's conclusion that misappropriation occurred because Bankhead's expenses were over-budget during his tenure. The bankruptcy court further considered that the Williams–Keepers' report failed to establish defalcation as it is "quite possible that funds classified as either Included or Questionable were actually spent on legitimate American Legion business." The bankruptcy court concluded that the American Legion did not established that funds which it alleged were misappropriated

were not spent on legitimate American Legion business. *See* Dec. at 15.

The bankruptcy court also considered whether Bankhead's conduct amounted to embezzlement so as to qualify as a nondischargeable debt under § 523(a)(4). To establish embezzlement for purposes of this section, a plaintiff must establish that the debtor was not lawfully entitled to use funds which were entrusted to him "for purposes for which they were in fact used." Dec. at 16 (citing *In re Casagrande*, 143 B.R. 893 (Bankr.W.D.Mo. 1992)). With the exception of the airline tickets, the bankruptcy court concluded that the American Legion failed to show that Bankhead embezzled funds.

The bankruptcy court further considered whether Bankhead's conduct amounted to larceny, for purposes of § 523(a)(4). To establish larceny, under § 523(a)(4), a plaintiff must establish that the debtor engaged in the " 'fraudulent and wrongful taking and carrying away of the property of another with the intent to [convert] such property to the taker's use without the consent of the owner.' " Dec. at 17 (quoting *In re Clayton*, 198 B.R. 878, 884 (Bankr.E.D.Pa.1996)). The bankruptcy court concluded that because Bankhead was authorized to handle the American Legion's money, the American Legion failed to establish the prerequisite element of proving that he engaged in larcenous conduct.

Finally, the bankruptcy court concluded that the American Legion failed to establish the alleged indebtedness of Bankhead to the American Legion is nondischargeable by even a preponderance of the evidence, with the exception of $3,500.00.

The American Legion filed a Motion for Amendment of Findings or Judgment, or in the Alternative, Motion for a New Trial. *See* Defendant. Ex. C. In response to the American Legion's argument that the bankruptcy court should have considered Bankhead's conduct during his entire tenure as Adjutant, rather than limiting its decision to the period between March 1997 and March 1999, the bankruptcy court stated that its previous discussion concerning the American Legion's evidence "applies with equal force over the course of the entire period of time that Lowell Bankhead served as Adjutant." *See* June 23, 2000 Dec. at 4. In response to the American Legion's motion, the bankruptcy court also noted that there was no evidence that Bankhead failed to keep adequate financial records; that the American Legion presented hearsay evidence in this regard, which the court correctly rejected; and that the American Legion did not call Bankhead as a witness. The bankruptcy court further noted that it granted Bankhead's motion for judgment in his favor at the close of the American Legion's case in chief; that Bankhead had no need to present a defense; and that it was the American Legion's choice not to call Bankhead as a witness, despite the fact that it could have called him. The bankruptcy court denied the American Legion's post trial motion on June 23, 2000.

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the Court shows that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*Celotex*); *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir.1997). The initial burden is placed on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment

in his favor. *See Handeen v. Lemaire,* 112 F.3d 1339, 1346 (8th Cir.1997); *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op.,* 838 F.2d 268, 273 (8th Cir.1988).

Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and "specific facts showing there is a genuine issue for trial." *Handeen,* 112 F.3d at 1346 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Once the burden shifts, a party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to the jury without any significant probative evidence tending to support the complaint. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Moreover, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the non-moving party must establish to the court that there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for him. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *see also Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996) (*Fennell*) (holding that Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment, ... upon motion, against a party who fails to make showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *See Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is an "integral part of the Federal Rules as a whole." *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548; *City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir. 1988).

## DISCUSSION

In its Complaint, the American Legion asserts that while Bankhead was Adjutant for the American Legion during the period from April 1, 1996, through his termination

in 1999, he dishonestly took, stole, and spent without authorization sums of money in excess of $250,000.00; that the American Legion demanded that Defendant Hanover pay the amount due under the above described policy of insurance; that the American Legion complied with the terms and conditions of the insurance policy; and that Defendant Hanover has refused to pay the American Legion the amount which is due under the insurance policy. The American Legion also alleged that Defendant Hanover's conduct amounts to vexatious refusal to pay an insurance claim.[1]

## A. Is the Agreement Between the Parties an Insurance Policy or a Fidelity Bond?

In support of its Motion for Summary Judgment, Defendant Hanover argues that the agreement between it and the American Legion, quoted above, is a fidelity bond which requires that the American Legion transfer to Defendant Hanover all of its rights of recovery against any person for any loss sustained. *See* Defendant. Mem. at 7. Citing the Restatement of Law of Suretyship and Guaranty (Third) § 67, comment d (American Law Institute 1995), Defendant Hanover further argues that it is only secondarily liable for the obligations of its bond principals, and that because the principal obligor, here Bankhead, has obtained a judgment in his favor regarding his obligation to the obligee, here the American Legion, the American Legion is barred from asserting its claim against the secondary obligee, Defendant Hanover. *See* Defendant. Mem. at 7.

The American Legion argues, in response, that Defendant Hanover misrepresents the nature of their agreement, which is an insurance policy, rather than a fidelity bond, and that insurance principals, therefore, apply to this matter.

A fidelity bond is defined as a contract of fidelity insurance. It is a "guaranty of personal honesty of [an] officer furnishing indemnity against his defalcation or negligence." BLACKS LAW DICTIONARY 624 (6th Ed.1990) (citation omitted). Additionally, it is "[a] contract whereby, for a consideration, one agrees to indemnify another against loss arising from the want of honesty, integrity, or fidelity or an employee or other person holding a position of trust." *Id.* (citation omitted).

It is a "fundamental premise that an insurance policy protects an insured from fortuitous loss." *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1391 (8th Cir.1996). Fidelity insurance is a contract of insurance "whereby the insurer, for a valuable consideration, agrees, subject to certain conditions, to indemnify the insured against loss consequent upon the dishonesty or default of a designated person." *Id.*

According to the above quoted definition, an agreement between parties may be characterized as a fidelity bond as well as an insurance contract; a fidelity bond is merely a type of insurance. The court finds, therefore, that the arguments of the parties are not mutually exclusive. The court further finds that the terms of the contract for insurance at issue in this matter establish that it provides for fidelity

---

1. Plaintiff The American Legion Department of Missouri Incorporated ("the American Legion"), filed its complaint in the Circuit Court of the City of St. Louis, Twenty Second Judicial Circuit, State of Missouri. Defendant The Hanover Insurance Company ("Defendant Hanover" or "Hanover") removed this matter to the United States District Court for the Eastern District of Missouri, Eastern Division, by Notice, dated January 15, 2002. *See* Doc. 1 Defendant Hanover filed a third-party complaint against Third–Party Defendant Lowell Carey Bankhead ("Bankhead").

insurance. For the reasons stated below the court finds that this characterization is not determinative of the issue before this court: whether res judicata or collateral estoppel apply to the determination of the bankruptcy court.

### B. Do Res Judicata and/or Collateral Estoppel Require Dismissal of the Complaint?

In support of its Motion for Summary Judgment, Defendant Hanover argues that the doctrine of collateral estoppel bars the American Legion's right to litigate the issue of Bankhead's alleged misappropriation of funds while Adjutant for the American Legion. Third–Party Defendant Bankhead joins in Defendant Hanover's motion. In response, Plaintiff first argues that because Defendant Hanover was not a party to the proceedings before the bankruptcy court, the doctrines of collateral estoppel and res judicata do not apply.

 The United States Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (*Grogan*), controls the matter before this court. In *Grogan*, the Court noted that its prior cases and that of virtually every court of appeals have held that "collateral estoppel is applicable in discharge exception proceedings." *Id.* at 285 n. 11, 111 S.Ct. 654. In *Cochrane*, 124 F.3d at 983 (citations omitted), the Eighth Circuit likewise held that "it is now well settled that 'the principle of collateral estoppel applies in bankruptcy court to bar the relitigation of factual or legal issues that were determined in a prior state court action.'" In *Cochrane* the court considered the requirements for the application of collateral estoppel and found that as all were met, collateral estoppel applied and the bankruptcy court was bound by the findings in state court that the defendant breached his fiduciary duty. While in this matter, Defendant Hanover argues that this federal court, pursuant to its diversity jurisdiction, is bound by the findings of the bankruptcy court regarding Bankhead's conduct, rather than the bankruptcy court's being bound by the findings of a state court, this court finds that the principals of *Grogan* and *Cochrane* are likewise applicable. Moreover, Missouri courts hold that "[e]xcept for certain exceptions, ... the rules of res judicata and collateral estoppel apply to decisions of the bankruptcy courts." [2] *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 263, 269 (Mo.App.1996) (*AgriBank*). The court will therefore consider whether the prerequisites for the applicability of collateral estoppel are present. As the court finds, below, that collateral estoppel is applicable to the matter under consideration, it need not consider the applicability of res judicata.[3]

---

**2.** The exceptions relate to estimates of value made during a bankruptcy hearing. Such estimates are binding only for purposes of the specific bankruptcy hearing and do not have a res judicata effect in subsequent hearings. *See AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 263, 272 (Mo.App.1996). This exception, therefore, is not applicable to the matter under consideration where valuation of property is not at issue.

**3.** Res judicata is referred to as "claim preclusion," as it "precludes the same parties or those in privity from relitigating a cause of action." *AgriBank FCB v. Cross Timbers*

*Ranch, Inc.*, 919 S.W.2d 263, 269 (Mo.App. 1996) (*AgriBank*). The Eighth Circuit Court of Appeals has outlined a four-part test to determine when res judicata bars re-litigation of a claim: (1) the first suit must result in a final judgment on the merits; (2) the first suit must be based on proper jurisdiction; (3) both suits must involve the same nucleus of operative fact; and (4) both suits must involve the same parties or their privies. *See Kolb v. Scherer Bros. Fin. Servs. Co.*, 6 F.3d 542, 544 (8th Cir.1993); *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir.1990). The judgment is conclusive as to all matters within the scope

The doctrine of collateral estoppel, or issue preclusion, bars issues which have been resolved in a prior litigation. *See id.* at 269. Federal law provides that before collateral estoppel will bar the re-litigation of a factual issue in a subsequent proceeding, the prior determination must also satisfy a four-part test: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been determined by a valid and final judgment; (3) the allegedly estopped party must have been a party or in privity with a party in the prior adjudication; and (4) the allegedly estopped party must have had a full and fair opportunity to be heard on the adjudicated issue. *See Aetna Cas. and Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir.1992). *See also, Farmland Industries, Inc. v. Morrison–Quirk Grain Corp.*, 987 F.2d 1335, 1339 (8th Cir.1993) (*Farmland*); *Tolefree v. City of Kansas City, Mo.*, 980 F.2d 1171, 1174 (8th Cir.1992). The person asserting collateral estoppel bears the burden of proving that a prior decision satisfies all four elements of the test. *See Farmland*, 987 F.2d at 1339.

The requirements of collateral estoppel pursuant to Missouri law are similar to those under federal law, with the addition that Missouri law states specifically that the judgment in the prior adjudication must be on the merits. *See In re Scarborough*, 171 F.3d 638, 640 (8th Cir. 1999) (citing *State v. Nunley*, 923 S.W.2d 911, 922 (Mo.1996) (en banc)). Under Missouri law, collateral estoppel " 'applies only

to those issues that were necessarily and unambiguously decided.' " *Id. See also, In re Caranchini*, 956 S.W.2d 910, 912–13 (Mo.1997) (*Caranchini*).

First, pursuant to a collateral estoppel analysis, it must be determined if the issues before the bankruptcy court are the same issues that are now before this court. In *Caranchini* the Missouri Supreme Court stated that the "identity of the factual issues is a critical factor for applying the doctrine of collateral estoppel." 956 S.W.2d at 913. Where the factual findings of the federal court, in this case the bankruptcy court, clearly concern the very same conduct that is the basis for the state court action, in this case a matter removed to federal court pursuant to the court's diversity jurisdiction, collateral estoppel's identity of issues requirement is satisfied. *See id.*

The American Legion claims in this matter that Bankhead "dishonestly took, stole, and spent without authorization" in excess of $250,000. Pursuant to the American Legion's claim before the bankruptcy court that Bankhead had a nondischargeable debt to the American Legion in the amount of $250,000.00, the bankruptcy court considered whether Bankhead engaged in fraud, fiduciary defalcation, embezzlement, and larceny. The bankruptcy court considered the facts presented by the American Legion in view of the applicable law and concluded that Bankhead's alleged debts were dischargeable. As this court discussed above, the bankruptcy

---

of the pleadings which could and should have been adjudicated. *See id.* at 741.

Missouri courts have articulated the requirements of res judicata as follows:

A fact or question which was actually passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and

persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon either the same or a different cause of action.

*AgriBank*, 919 S.W.2d at 269 (quoting *Norwood v. Norwood*, 353 Mo. 548, 183 S.W.2d 118, 123 (1944)).

court discussed in detail the elements of the conduct required to establish each of these reasons for finding a debt nondischargeable under the bankruptcy code, as well as the evidence presented by the American Legion. Thus, this court need not now reiterate them. It suffices to say that, based on the evidence presented regarding Bankhead's expenditures while Adjutant, the bankruptcy court found that the American Legion did not establish, by a preponderance of the evidence, that Bankhead's conduct: (1) amounted to fraud, intentional wrongdoing, or moral turpitude; (2) amounted to the misappropriation of trust funds or money held in a fiduciary capacity or a failure to properly account for such funds, regardless of intent; (3) amounted to the fraudulent appropriation of property of another when that property was entrusted to him; and (4) amounted to the fraudulent and wrongful taking of the property of another with the intent of converting the property to his use without the consent of the owner. Thus, the issue before the bankruptcy court was whether Bankhead misappropriated funds of the American Legion. Essentially, the bankruptcy court found that the American Legion did not establish that Bankhead dishonestly took, stole, or spent without authorization, while acting in a fiduciary capacity, the funds belonging to the American Legion, with the exception of $3,500.00. The court finds, therefore, that the issues before the bankruptcy court regarding Bankhead's conduct are the same issues are that are before this court and that the issues before both courts require a finding of whether Bankhead misappropriated funds while Adjutant of the American Legion. Under such circumstances, the identity of the issues requirement is met.

Second, the decision of the bankruptcy court addressed the merits of the American Legion's claim that Bankhead dishon-estly took, stole, and spent its funds while he was in a fiduciary capacity. The bankruptcy court concluded that Bankhead did not engage in such conduct. The court, therefore, finds that the judgment in the bankruptcy court was on the merits of the issue which is before this court pursuant to the Complaint of the American Legion.

Third, the court finds that the issues before this court were determined by a valid and final judgment of the bankruptcy court. The bankruptcy court issued a Judgment on June 1, 2000, and the American Legion filed a Motion for Amendment of Findings or Judgment, or in the Alternative, Motion for a New Trial, which motion the bankruptcy court denied. *See* Defendant. Ex. C. The bankruptcy court issued its decision denying the American Legion's post trial motion on June 23, 2000. The American Legion has not suggested to this court why the bankruptcy court's determinations should not be considered a valid and final judgment. The court, therefore, finds that the valid and final judgment requirement of collateral estoppel is satisfied.

Fourth, the party against whom collateral estoppel is asserted, the American Legion, had a full and fair opportunity, before the bankruptcy court, to litigate the matter now before this court. During the bankruptcy proceedings, the American Legion presented witnesses and documentary evidence in support of its position that Bankhead's alleged debt should not be discharged because he misappropriated its funds. The bankruptcy court did not prohibit any of the American Legion's witnesses from testifying, and as noted by the bankruptcy court, the American Legion could have called Bankhead as witness in its case in chief, but chose not to do so. Significantly, the American Legion filed a post trial motion which the bankruptcy court fully considered in a lengthy and

articulate decision. Under such circumstances, the court finds that the full and fair opportunity to litigate requirement for the application of collateral estoppel is satisfied.

Finally, the American Legion, whom Defendant Hanover claims is the estopped party, was a party to the prior adjudication. It is well established that under the doctrine of collateral estoppel, only the party against whom this doctrine is being asserted is required to have been a party to or in privity with a party who was a party to the original judgment. *See e.g., Caranchini,* 956 S.W.2d at 912. Under such circumstances, the court finds that all of the elements of collateral estoppel are met, and that collateral estoppel applies to the issues raised in the American Legion's complaint. *See Tudor Oaks,* 124 F.3d at 983.

As stated by the Eighth Circuit in *In re Scarborough,* "[t]he purposes of collateral estoppel are to relieve parties of 'the expense and vexation attending multiple lawsuits, conserve [ ] judicial resources, and foster [ ] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" 171 F.3d at 642 (citing *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). The court finds that the application of collateral estoppel in this matter is consistent with these goals, as well as the underlying principles of protecting litigants from relitigating issues and the promotion of judicial economy. *See Caranchini,* 956 S.W.2d at 914. Therefore, the finding of the bankruptcy court that Bankhead did not commit any acts of positive fraud, intentional wrongdoing, moral turpitude, defalcation, embezzlement, or larceny while holding the position of Adjutant of the American Legion, with the exception of $3,500, must be given full force and effect by this court. Additionally, the bankruptcy court's deci-sion to discharge the debt which the American Legion claimed Bankhead owed to it, with the exception of the $3,500, must be given full force and effect by this court. This court will, therefore, grant Defendant Hanover's Motion for Summary Judgment.

The American Legion's Complaint will be dismissed in regard to its claim against Defendant Hanover, with the exception of $1,000, which represents the $3,500 debt of Bankhead which the bankruptcy court found nondischargeable, less the $2,500 deductible, as provided by the agreement between Defendant Hanover and the American Legion. Defendant Hanover will be ordered to pay the American Legion $1,000. Significantly, Defendant Hanover acknowledges that it owes this amount.

**C. The American Legion's Claim that Defendant Hanover's Refusal to Cover its Loss Amounts to a Vexatious Refusal to Pay:**

 The American Legion claims that Defendant Hanover's conduct of refusing to pay pursuant to the agreement between the parties amounts to a vexatious refusal to pay an insurance claim. Under Missouri law, "[t]o recover penalties for vexatious refusal to pay, an insured must prove that the refusal was willful and without reasonable cause. If there is an open question of fact or law determinative of coverage, the insurer may insist upon a judicial determination of that question without incurring this statutory penalty." *State of Missouri ex rel. Pemiscot County, Missouri v. W. Sur. Co.,* 51 F.3d 170, 174 (8th Cir.1995) (citations omitted). Because the bankruptcy court's decision, as well as the determination of this court, supports Defendant Hanover's position that the American Legion is not entitled to payment pursuant to its insurance policy, with the exception of the $1,000 which Hanover admits it owes the American Legion, the

court finds that the American Legion's claim for vexatious refusal to pay must fail.

### D. Defendant Hanover's Third–Part Complaint Against Lowell Carey Bankhead:

In its Third–Party Complaint Defendant Hanover seeks judgment against Bankhead in the amount of $3,500 or such sums as the court determines Defendant Hanover is liable to the American Legion. In its Memorandum to this court, Defendant Hanover admits that, because Bankhead was found to have misappropriated $3,500 by the bankruptcy court, it owes the American Legion $1,000. As stated above, this amount represents $3,500 in misappropriated funds, less the $2,500 deductible provided by the parties' agreement. The court finds that Defendant Hanover's claim in its Third–Party Complaint that Bankhead owes it $3,500 is inconsistent with its admission that it owes the American Legion only $1,000.

■ Defendant Hanover does seek to recover from Bankhead only that amount which this court determines it owes to the American Legion. As the court has found above that Defendant Hanover owes the American Legion $1,000, that amount is the maximum amount which Defendant Hanover can recover from Bankhead. Because the $3,500 for airline tickets was found to be nondischargeable by the bankruptcy court, collateral estoppel dictates that this court give full force and effect to this portion of the bankruptcy court's decision as well as to the debts found dischargeable. The court finds, therefore, Bankhead is liable to Defendant Hanover in the amount of $1,000, and that no further relief is warranted pursuant to Defendant Hanover's Third–Party Complaint.

### CONCLUSION

The court finds that the doctrine of collateral estoppel precludes the relitigation of the issues that were before the bankruptcy court and which issues are also before this court. The court further finds that, as the bankruptcy court found that Bankhead misappropriated $3,500, Defendant Hanover is obligated, pursuant to the terms of its agreement with the American Legion, to pay the American Legion that amount, less the deductible of $2,500 ($1,000), as further stated in the agreement. The court also finds that Bankhead must pay Defendant Hanover $1,000. Therefore, the court finds that Defendant Hanover's Motion for Summary Judgment should be granted with respect to the Complaint filed by the American Legion. Judgment will also be entered in favor of Defendant Hanover on its Third–Party Complaint against Bankhead in the amount of $1,000.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant The Hanover Insurance Company's Motion for Summary Judgment is **GRANTED;** [20]

**IT IS FURTHER ORDERED** that Third–Party Complaint of The Hanover Insurance Company against Lowell Carey Bankhead is **GRANTED,** in part, to the extent of $1,000, and **DISMISSED,** in regard to all other claims for relief; [20]

**IT IS FURTHER ORDERED** that the Complaint filed by the American Legion against the Hanover Insurance Company is **DISMISSED,** in part, and that Judgment will be entered for the American Legion in the amount of $1,000;

**IT IS FURTHER ORDERED** that a separate Judgment will be entered incorporating this Memorandum and Order.